UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

FIRST PENTECOSTAL CHURCH
OF JACKSON                                              PLAINTIFF

VS.                                    CIVIL ACTION NO. 3:09CV34TSL-FKB

BROTHERHOOD MUTUAL INSURANCE
COMPANY                                                 DEFENDANT

## MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendant Brotherhood Mutual Insurance Company (Brotherhood), pursuant to Federal Rule of Civil Procedure 56, for summary judgment or, in the alternative, partial summary judgment on the issue of punitive damages. Plaintiff First Pentecostal Church of Jackson (First Pentecostal) has responded to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion for summary judgment must be denied, while the motion for partial summary judgment is well taken and will be granted.

First Pentecostal has brought this action seeking to recover benefits under its policy with Brotherhood for property damage alleged to have resulted from Hurricane Katrina, and further demanding punitive damages based on its charge that Brotherhood's alleged failure to pay "all of plaintiff's losses as required under the policy" was arbitrary, capricious, without cause and in

bad faith.  In the present motion, Brotherhood contends that on the basis of the undisputed facts of record, the court is bound to conclude that as a matter of law, it has no further payment obligation under the policy because First Pentecostal failed to provide timely notice of its present claim for policy benefits.

There is no dispute between the parties that the church property received some damage when Hurricane Katrina hit on August 29, 2005.  There is also no dispute that, following the hurricane, First Pentecostal immediately contacted Brotherhood, which sent an adjuster to inspect the damage on September 10, 2005.  Based on his inspection, and after consulting with church pastor Hansel Stanley regarding the hurricane damage, the adjuster determined the aggregate damages claimed as replacement cost were $85,916.76, less the deductible, which, following depreciation, resulted in an actual cash value (acv) of $75,769.23 for the loss.  Brotherhood tendered a check in that amount to First Pentecostal on October 13, 2005.  In the transmittal letter accompanying the check for First Pentecostal's "covered claim," Brotherhood wrote:

> Enclosed is a check for [$75,769.23], based on the adjuster's estimate.  Your policy does provide replacement cost coverage.  You may submit a claim for the balance of the estimated amount once you complete the repairs and incur the expense.  You will need to submit invoices, cancelled checks, or some other documentation showing that you have spent the money.

> Your policy allows you 6 months to notify us of your
> intent to submit this supplemental claim.[1]
>
> I also anticipate your supplemental claim for the
> EIFS (stucco) that was damaged and not included in the
> agreed figures.  I'll review that estimate when you
> provide it and will respond from there.  If you have any
> questions, please call....

When Brotherhood did not receive a claim from First Pentecostal within six months "for the balance of the estimated amount" for the damage covered by the acv payment, and did not submit a "supplemental claim for the EIFS that was damaged," Brotherhood wrote to First Pentecostal on May 12, 2006, stating,

> As you know, we previously sent you the initial actual
> cash value (acv) on your claim.  We notified you in the
> accompanying letter that the policy states the remainder
> of the replacement cost – up to the allowed amount –
> would be recoverable once the work was completed and the
> costs incurred.  The policy states a guideline that you
> must notify us within 180 days from the loss date if you
> intend to make claim for the additional funds.
>
> Due to the extensive damage from the hurricane, we are
> extending the time period in which you must notify us of
> your intent to complete repairs.  We're simply asking
> that you contact us at your earliest convenience and let
> us know whether you intend to pursue your replacement
> cost claim.  You will continue to have a reasonable
> period of time to finish repairs and submit the final
> invoice(s).

---

[1] Under the Brotherhood policy, the insured is entitled to the full cost of replacing the damaged property, but only after the property has in fact been replaced.  However, the insured may receive a payment based on the "actual cash value" method in advance of actual replacement of the damaged property, with an additional payment to be received equal to the difference between the "actual cash value" and the "replacement cost" once the cost is actually incurred to replace the property.  The policy provides that the insured has 180 days from the date of loss to let the carrier know whether it intends to seek its replacement costs.

3

This was the last communication between the parties until nearly two years later, when Brotherhood received a letter dated March 27, 2008 from Tremaine Enterprises, Inc. (Tremaine), a public insurance adjusters firm, advising it had been retained by First Pentecostal to adjust the loss, and including a scope of damage report in which it claimed that additional benefits were owing under the policy of more than $1,200,000 for Hurricane Katrina-related damage to the church.

Upon receipt of the Tremaine report, Brotherhood undertook to again inspect the church property to assess any additional damage that may have been attributable to the hurricane. However, while its investigation was ongoing, First Pentecostal filed the present action on August 27, 2008 in the Circuit Court of the Hinds County, Mississippi, asserting claims against Brotherhood for losses in the amount of $1,201,414.54 allegedly caused by wind damage to First Pentecostal's building structure, and further alleging that Brotherhood's "failure to pay First Pentecostal's losses in accordance with the policy is arbitrary, capricious, without cause and in bad faith."[2] Subsequently, by letter dated December 11, 2008, Brotherhood stated that as a gesture of

---

[2] Presumably, First Pentecostal proceeded with litigation, without awaiting a response by Brotherhood to its demand, because the three-year statute limitations was about to expire. See Miss. Code. Ann. § 15-1-49. The case, filed in state court, was removed by Brotherhood to this court on the basis of diversity jurisdiction.

4

goodwill, it would pay an additional $30,249.18 for damage items that were included in the original acv estimate to cover additional tax, overhead, profit margins and minor additional repairs, but it denied coverage for the additional costs claimed. Brotherhood advised First Pentecostal (through Tremaine) that its adjuster questioned whether the repairs covered by the October 2005 acv payment had been done in a timely manner, and noted that the policy excluded coverage for loss caused by the insured's neglect to use reasonable means to save covered property after a loss. It further explained that its adjuster had found that much of the damage included in the Tremaine scope of damage report was "from other causes unrelated to the storm," to which policy exclusions applied, such as problems with the original construction of the building, normal settling and expansion/contraction of the building and the ground (i.e., soil movement), and wear and tear. In addition, it advised that its adjuster had concluded that the scope and costs were "very unreasonable." Brotherhood concluded, stating,

> In summary, we believe that we accurately assessed the damage from Hurricane Katrina during our original investigation and settlement of the claim. We fulfilled our duty to promptly investigate the claim and pay for all damages found from covered causes of loss. We reviewed our assessment with our policyholder and explained our findings. They had more than a reasonable amount of time in which to review the claim information, obtain estimates, and notify us if any further damage was found. It was not until over two and a half years after Katrina that you contacted us with your estimate. Based on the policy exclusions applicable, [including

5

exclusions for loss caused by the insured's neglect to save covered property after a time of loss, the late reporting and failure to properly mitigate damages], and the other reasons stated, we are not able to cover the additional costs you've claimed.

In its present motion, Brotherhood argues that it is entitled to summary judgment because First Pentecostal's "second claim" for benefits, which it filed through Tremaine in 2008, was so unreasonably late as to preclude recovery under the policy, which calls for "prompt notice."  It claims that First Pentecostal, in derogation of its duties under the policy, "failed to give the requisite prompt notice of additional damages claimed [and] failed to provide detailed estimates as requested, within a reasonable time[,] and thus hindered Brotherhood's ability to re-inspect the property in a timely manner to respond to the second claim."  For the reasons that follow, the court concludes that Brotherhood has failed to present sufficient evidence to establish that First Pentecostal's notice was untimely as a matter of law.  Therefore, its summary judgment motion must be denied.

Brotherhood's policy states:

WHAT YOU MUST DO IN CASE OF LOSS
1.  **Notice** – In case of loss, you must:
a.  give us ... prompt notice including a description of the property involved (we may request written notice).
...

"The purpose of a provision for notice of loss is to afford the insurer an adequate opportunity to investigate, to prevent fraud and imposition upon it, and to form an intelligent estimate

6

of its rights and liabilities before it is obliged to pay." 13 Couch on Insurance § 186:14 (3d. ed. 2005).  See also Reliance Ins. Co. v. County Line Place, Inc., 692 F. Supp. 694, 696 (S.D. Miss. 1988) (observing that "the purpose of the notice clause ... is 'to enable [the insurer] to investigate a claim....; to itself decide whether the claim should be settled without litigation, and, if not, to prepare its defense thereto....'") (quoting State of Mississippi ex rel. King v. Richardson, 634 F. Supp. 133, 135 (S.D. Miss. 1986), aff'd., 817 F.2d 1203 (5th Cir. 1987)); Jackson v. State Farm Mut. Auto. Ins. Co., 880 So. 2d 336, 343 (Miss. 2004) ("Timely notice protects the insurer's right to investigate the events underlying the claim and allows the insurer to make decisions regarding the defense of that claim."). "The specific information which an insured must provide will differ depending on the nature of the policy and, to some degree, the specific language used to describe the requisite information." Couch, § 189.5.  "In general, a notice must provide enough information for the insurer to begin its investigation of the circumstances and to enable it to form an intelligent estimate of its rights and liabilities before it is obliged to pay." Id.  "In the context of property insurance, a reasonable construction of notice of loss requires only that the claimant furnish the insurer with the best information as to the facts which he or she possesses at the time, and that he or she act in good faith in giving such notice." Id.

§ 186:32. "Where no requirements are specified in the policy as to the content of the notice, any notice is sufficient that reasonably conveys to the insurer that it may be liable...."
§ 189.5. Some factors which have been considered in determining the sufficiency of the content of notice include whether

> • Initial notice was adequate to put insurer on notice of potential liability under the policy.
> • The undisclosed or later-revealed facts were so material that they should have been reported.
> • Notice was sufficient for insurer's investigation and discovery of all the facts relative to its potential liability.
> • The insurer's reasonable investigation could have uncovered the excluded information.

Id. (citations omitted).

In the case at bar, there is no question but that First Pentecostal provided immediate notice to Brotherhood that the church building had sustained damage as a result of Hurricane Katrina.³ Indeed, Brotherhood's adjuster was at the church performing an inspection of the damage a week-and-a-half after the

---

³ This fact distinguishes the present case from the cases cited by Brotherhood in support of its motion, all of which involve alleged failures to provide notice of any loss, of event causing a loss, until months or years after the insured was aware of its loss, or potential loss. See Wilcher v. Michigan Mutual Insurance Co., 691 F. Supp. 1019, 1020 (S.D. Miss. 1988) (finding that two-and-a-half year delay between date of accident and insured's first notification to insurer of any occurrence given rise to coverage was so unreasonable as to preclude recovery under policy); Reliance Ins. Co. v. County Line Place, Inc., 692 F. Supp. 694, 697 (S.D. Miss. 1988) (holding that delay of ten months in furnishing notice of occurrence did not comply with policy requirement of notice "as soon as practicable"); Harris v. American Motorist Ins. Co., 126 So. 2d 870 (Miss. 1961) (holding that notice given 13 months after accident was not given "within a reasonable time" and hence was untimely under policy).

hurricane. However, Brotherhood takes the position that although it was aware that First Pentecostal had sustained *some* loss as a result of the hurricane, First Pentecostal failed to timely apprise Brotherhood as to the full extent of the damage it now claims was caused by the hurricane, and as a result, is barred from recovering under the policy for any alleged storm-related damage that was not brought to Brotherhood's attention and for which the insured failed to make any claim in a timely manner.

Neither party has offered evidence identifying in detail the specific damage to the church for which Brotherhood's original acv payment was made in October 2005, nor has either offered evidence as to all the specific damage items included in the Tremaine scope of damage report. However, the parties' arguments suggest that First Pentecostal's 2008 demand for additional policy benefits includes some damage items that actually were included in the Brotherhood's original acv payment but for which First Pentecostal apparently now contends Brotherhood's payment was inadequate, as well as some damage items which were not included in the original payment, i.e. for which there has been no payment at all.

As there is nothing in the record to show that First Pentecostal accepted the original payment as full payment for the losses purportedly covered by that payment or released any claim for additional benefits for these damage items, the court cannot conclude that First Pentecostal is foreclosed from pursuing a

9

claim herein that the acv payment for those covered items was inadequate. Having said that, the policy provides that in order to recover its actual replacement costs, the insured must provide notice within 180 days of a loss that it intends to seek its replacement costs. Given that First Pentecostal did not communicate with Brotherhood following its receipt of the $75,769.23 check in October 2005, it cannot reasonably be said that it timely informed Brotherhood that it would be seeking its replacement costs for *any* of the damage to the church. As a result, it is necessarily barred from recovering those costs and is limited to recovering the actual cash value estimate.

As indicated, the parties' arguments also suggest that while the Tremaine scope of damage report includes originally-adjusted damage items covered by the acv payment, most of the claimed $1,201,414.54 is for damage (including nearly $600,000 for stucco damage) that was not included in the original payment. In its motion and memoranda, Brotherhood insists that from the time it conducted its inspection of the property in September 2005 until the date it received the demand from Tremaine in March 2008, it was completely unaware, and had no reason to know, that First Pentecostal was contending the church had sustained any damages that had not been accounted for when the claim was originally adjusted and payment made. It claims that its adjuster performed a full inspection of the church premises and met with Pastor

10

Stanley to discuss the damage, and that the adjuster prepared an estimate that included all the damage that appeared to have been caused by Hurricane Katrina and which, so far as he knew, was claimed by First Pentecostal to have been caused by the hurricane. It submits that based on this inspection, and on the information provided by the insured, its original estimate and payment covered all the storm damage, with one limited exception. Specifically, in a conversation with Pastor Stanley in which the adjuster informed him of the damage estimate, Pastor Stanley indicated that there was some minor water damage to the stucco under a canopy over the entrance. Brotherhood states that the parties agreed that First Pentecostal could get an estimate for this damage and that it could be included in the claim. According to Brotherhood, this is the stucco damage to which it referred when it wrote to First Pentecostal in October 2005, advising that it "anticipated [a] supplemental claim for the EIFS (stucco) that was damaged and not included in the agreed figures." Brotherhood states that while it invited First Pentecostal to submit an estimate for this damage, no estimate was ever received. Brotherhood states that First Pentecostal's more recent claim for nearly $600,000 in stucco damage is not the stucco damage to which its letter referred, and that it was unaware of such claimed damage, or any of the other "new" damages included in the Tremaine scope of damage report, until it received the 2008 demand for additional

11

damages under the policy. Finally, Brotherhood maintains that as a direct result of First Pentecostal's failure to provide prompt notice of the additional damage it is now claiming was caused by the hurricane, it has been hindered in its ability to timely and meaningfully reinspect the property to ascertain where there is, in fact, additional covered damage from Hurricane Katrina, and as a result, that it has been severely prejudiced.[4]

In response, First Pentecostal contends it timely notified Brotherhood of its loss, as evidenced by the fact that Brotherhood inspected the property less than two weeks after the hurricane. It further argues that Brotherhood's present predicament is not the result of any failure by First Pentecostal to give timely notice of its loss, but rather is the result of Brotherhood's own

---

[4] Brotherhood argues that because prompt notice of loss is a condition precedent under its policy, it is not required to show that it has been prejudiced by First Pentecostal's unreasonably delayed notice, but it contends that the prejudice here is manifest in any event. Because the court concludes there is a genuine issue of material fact as to whether First Pentecostal failed to provide timely notice of its present claim for benefits, the court need not consider whether proof of prejudice is required, see Jackson v. State Farm Mut. Auto. Ins. Co., 880 So. 2d 336, 341 (Miss. 2004) (indicating that under Mississippi Supreme Court precedent, even "where an insurance policy requires notice as a condition precedent to coverage, coverage may still be allowed unless the insurer suffered prejudice due to delay") (citing Harris v. American Motorist Ins. Co., 240 Miss. 262, 126 So. 2d 870, 873 (1961), and Lawler v. GEICO, 569 So. 2d 1151, 1153 (Miss. 1990)), or if so, whether Brotherhood has established prejudice as a matter of law, see id. (stating, "We need not determine whether prejudice is such a subjective standard as never to be the subject of summary judgment even when significant harm to an insurer is undisputed.").

12

failure to conduct a reasonable and thorough investigation into the loss, as a result of which it failed to account for all the damage which the church sustained as a result of the hurricane in its original adjustment of the claim. See Pilate v. Amer. Federated Ins. Co., 865 So. 2d 387, 395 (Miss. Ct. App. 2004) (observing that Mississippi law places a duty on insurers to promptly and adequately investigate an insured's claims). According to First Pentecostal, at the time of Brotherhood's inspection of the property in September 2005, there was considerable damage to the church that was open and obvious but which Brotherhood, whether inadvertently or intentionally, ignored, including, but not limited to, obvious and substantial damage to the stucco exterior of the church. It states that it is not making a "new" claim for this damage, but rather is merely insisting on payment under the policy for its covered losses for which Brotherhood, owing to its inadequate investigation, failed to tender payment.

To reiterate, the premise of Brotherhood's motion is its contention that because the record evidence establishes that First Pentecostal failed to timely notify it of the additional damage for which it now seeks coverage, it has waived its right to recovery under the policy for those damages. In the court's opinion, however, because there is insufficient evidence in the record to establish the adequacy of Brotherhood's investigation,

13

and because it is unclear on the present record whether an adequate investigation would have revealed that the church had sustained additional damage from Hurricane Katrina, as now claimed by First Pentecostal,[5] the court concludes that the motion for summary judgment must be denied.[6] See Lawler v. Gov't Employees Ins. Co., 569 So. 2d 1151, 1159-1160 (Miss. 1990)(stating that "[t]he burden of proof is upon the insurer to show ... that the insured has failed to perform the terms and conditions invoked upon him by the policy") (quoting Rampy v. State Farm Mutual Auto.

---

[5] The court would be remiss if it failed to note, as Brotherhood points out in its rebuttal, that First Pentecostal has made absolutely no attempt to explain why it did not contact Brotherhood or make any supplemental claim with Brotherood until over two-and-a-half years after the date of loss. And First Pentecostal has not explained why it did not respond (with even so much as a phone call) to Brotherhood's two separate requests for notification of supplemental claims. These matters remain a mystery. Brotherhood also asks, quite reasonably, "If the damages to the EIFS were so obvious as claimed by First Pentecostal in its memorandum, why did First Pentecostal not make any inquiry into its repair or replacement at any time after Hurricane Katrina before two years later?" Certainly, at some point soon, First Pentecostal will be put to the task of explaining these blatant omissions on its part, and its explanations will no doubt bear on the credibility of its position.

[6] Under the policy, Brotherhood had the right to require that First Pentecostal submit a sworn proof of loss which included "detailed estimates for repair or replacement of covered property," and in the event one was requested, First Pentecostal had 60 days within which to submit a proof of loss. However, "the submission of a proof of loss is a distinct obligation from the insured's duty to provide notice of an occurrence or loss." 13 Couch on Insurance, § 186:19 (3d ed. 2005). Brotherhood does not contend in its motion that it ever requested that First Pentecostal submit a sworn proof of loss, and certainly, in the absence of such request, First Pentecostal was under no obligation to submit a proof of loss.

14

Ins. Co., 278 So. 2d 428 (Miss. 1973); see also Fontenot v. Upjohn Co., 780 F.2d 1190, 1194 (5th Cir. 1986) (to obtain summary judgment, "if the movant bears the burden of proof on an issue, ... he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor"). However, Brotherhood's alternative motion for partial summary judgment on the issue of punitive damages is well taken and will be granted.

As the basis for punitive damages, plaintiff's complaint alleges only that Brotherhood's "failure to pay [all] plaintiff's losses in accordance with the policy is arbitrary, capricious, without cause and in bad faith." In response to the motion, however, First Pentecostal argues that Brotherhood breached its obligations of good faith and fair dealing by failing to perform a reasonable investigation into the loss, as a result of which it has failed to pay First Pentecostal in full for its covered losses under the policy. More particularly, plaintiff argues that Brotherhood acted in bad faith in that it "made no effort to interview Church personnel about the extent of damage sustained by the Church as a result of Hurricane Katrina," and instead, "merely performed a cursory inspection of the Church during which it either inadvertently or intentionally failed to take notice of very open and obvious damage"; that while the actual replacement cost for the damage to the church building exceeds $1,200,000,

15

Brotherhood's tender of only $75,769.76 was grossly below the actual cash value of the damage and was grossly inadequate for the purpose of allowing plaintiff to undertake meaningful repairs; that Brotherhood has claimed the stucco damage was not caused by the hurricane when its own expert has concluded otherwise, and that Brotherhood has not tendered a single penny to First Pentecostal to allow it to begin repairing the stucco and other obvious damage to the church; that Brotherhood was unresponsive to First Pentecostal's claims, as a result of which plaintiff ultimately had to hire a public adjuster to seek recovery of the amounts owed under the policy; that upon receiving the public adjuster's scope of damage, Brotherhood did not attempt to meaningfully adjust the loss but rather hired a slew of hired gun experts to find other causes for the damage; and that Brotherhood has wrongfully claimed that the damage to the church building resulted from structural defects, when there is no evidence that such defects existed prior to the storm and when Brotherhood's own underwriting materials confirm that the church building is very well built.

Section 11-1-65(1)(a) of the Mississippi Code Annotated states that "[p]unitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless

16

disregard for the safety of others, or committed actual fraud."
Suffice it to say, in this case, First Pentecostal has failed to
identify any evidence to suggest that Brotherhood acted with
malice, was grossly negligent or acted in reckless disregard of
its insured's rights. First Pentecostal claims that Brotherhood
failed to adequately investigate the loss; but it has presented no
evidence that any such alleged alleged failure was other than
negligent. See Murphree v. Federal Ins. Co., 707 So. 2d 523, 531
(Miss. 1997) ("a plaintiff's burden in proving a claim for bad
faith refusal goes beyond merely demonstrating that the
investigation was negligent"; "the level of negligence in
conducting the investigation must be such that a proper
investigation by the insurer 'would easily adduce evidence showing
its defenses to be without merit'")(quoting Szumigala v.
Nationwide Mut. Ins. Co., 853 F.2d 274, 280 (5th Cir. 1988).
Moreover, while First Pentecostal has charged that Brotherhood's
tender of payment in October 2005 was inadequate to cover all its
losses resulting from the hurricane, the evidence belies any
reasonable conclusion that the carrier acted other than in good
faith with respect to that payment. After making the initial acv
payment, Brotherhood advised First Pentecostal of its right to
submit a supplemental claim, and even extended the time to allow
it do so. And yet First Pentecostal went for more than two years
without even communicating with the carrier. Furthermore,

17

Brotherhood's response to First Pentecostal's demand for additional payment in 2008 was clearly not unfounded. Plaintiff certainly has not shown that Brotherhood lacked a legitimate, or arguable reason for refusing additional payment under the circumstances presented. The motion for partial summary judgment will therefore be granted.

Based on the foregoing, it is ordered that Brotherhood's motion for summary judgment is denied, and it is further ordered that its motion for partial summary judgment on plaintiff's claim for punitive damages is granted.

SO ORDERED this 15th day of July, 2010.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE

18